# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## CASE NUMBER: 5:26-cv-00269

Selective Insurance Company of South
Carolina,

                                    Plaintiff,

v.

Thread Capital, Inc.; Mark Bibbs Law PLLC
d/b/a Mark Bibbs Law Group Consulting; and
Mark L. Bibbs,

                                    Defendants.

**COMPLAINT FOR DECLARATORY
JUDGMENT
(Non-Jury)**

Plaintiff Selective Insurance Company of South Carolina (hereinafter "Selective") seeks

declaratory relief to determine the rights of the parties, and alleges and shows as follows:

## JURISDICTION & VENUE

1.      Selective is an insurance company organized and existing under the laws of the

State of Indiana with its principal place of business in the State of Indiana and is authorized to sell

insurance and does sell insurance in North Carolina.

2.      Upon information and belief, Defendant Thread Capital, Inc. is a non-profit

corporation organized and existing under the laws of the State of North Carolina with its principal

place of business in Wake County, North Carolina.

3.      Upon information and belief, Defendant Mark Bibbs Law PLLC d/b/a Mark Bibbs

Law Group Consulting is a professional limited liability company organized and existing under

the laws of the State of North Carolina with its principal place of business in Wake County, North

Carolina.

4.      Upon information and belief, Defendant Mark L. Bibbs is a citizen and resident of

Wake County, North Carolina.

1

5. This action is brought under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and Rule 57, Fed. R. Civ. P.; there is a real and justiciable controversy between the parties, and by these proceedings Plaintiff asks this Court to inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth below.

6. The amount in controversy exceeds Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of citizenship; therefore, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1332(a)(1).

7. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

8. Selective issued a businessowners policy, Policy No. S 2013168, to Thread Capital Inc. and other named insureds with effective dates of February 1, 2025 to February 1, 2026 (hereinafter the "Selective Policy"). The Selective Policy includes Business Liability Coverage limits of $1,000,000 per occurrence and $3,000,000 in the aggregate. The Selective Policy also includes Umbrella Liability Coverage limits of $1,000,000 per occurrence and in the aggregate. A copy of the Selective Policy is attached hereto as Exhibit A.

9. The Selective Policy provides coverage to those qualifying as insureds for liability arising out of certain risks under the insuring agreements and excludes certain risks through the policy exclusions and limitations. Selective craves reference to the Selective Policy for all of the terms, conditions, and provisions therein and incorporates them by reference herein

10. The Selective Policy provides in pertinent part:

**BUSINESSOWNERS COVERAGE FORM**

\*\*\*

2

**SECTION II – LIABILITY**
A. **Coverages**
  1. **Business Liability**
     a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply….
     b. This insurance applies:
        (1) To "bodily injury" and "property damage" only if:
           (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
           (b) The "bodily injury" or "property damage" occurs during the policy period; and
                                    ***
        (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the coverage territory" during the policy period.
                                    ***

F. **Liability And Medical Expenses Definitions**
                                    ***
  13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
  14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one of more of the following offenses:
     a. False arrest, detention or imprisonment;
     b. Malicious prosecution;
     c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
     d. Oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
     e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
     f. The use of another's advertising idea in your "advertisement"; or
     g. Infringing upon another's copyright, trade dress or slogan in your advertisement.
                                    ***
  17. "Property damage" means:

     **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

***

**BUSINESSOWNERS LIABILITY ENHANCEMENT**

***

**F. DEFINITIONS**

Paragraph **F. Liability And Medical Expenses Definitions** is amended as follows:

**1. MENTAL ANGUISH**

(This provision does not apply in New York.)

Definition **3.** is replaced by the following:

　3.　"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time. (In New York, mental anguish has been determined to be "bodily injury.")

***

**COMMERCIAL UMBRELLA LIABILITY COVERAGE**

***

**SECTION I – COVERAGES**

**A. Insuring Agreement**

　**1.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that he insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

***

　**2.** This insurance applies to "bodily injury" or "property damage" only if:
　　**a.** The "bodily injury" or "property damage is caused by an "occurrence" that takes place in the "coverage territory";
　　**b.** The "bodily injury" or "property damage" occurs during the policy period; and

***

4

Case 5:26-cv-00269-D　　Document 1　　Filed 04/27/26　　Page 4 of 12

**6.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\*\*\*

**SECTION V – DEFINTIONS**

\*\*\*

**3.** "Bodily injury" means bodily injury, sickness, disease or disability sustained by a person, including death from any of these at any time including mental anguish or mental injury sustained by a person who has suffered a covered "bodily injury" as defined in this paragraph.

\*\*\*

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one more of the following offenses:
   **a.** False arrest, detention or imprisonment;
   **b.** Malicious prosecution;
   **c.** Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies; committed by or on behalf of its owner, landlord or lessor;
   **d.** Oral or written publication in any manner of material that violates a person's right of privacy; or
   **e.** Oral or written publication in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service.
   **f.** The use of another's advertising idea in your "advertisement"; or
   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".
   **h.** Discrimination because of race, religion, age, sex or physical disability.

\*\*\*

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Retained limit" means the greater of:

   **a.** The total of the limits as shown in the Declarations for the coverage(s) in question, and the limits of any other insurance not shown in the declarations that is valid and collectible; or
   **b.** The limit shown in the Declarations as the "self-retained limit".

\*\*\*

**PERSONAL AND ADVERTISING INJURY LIABILITY LIMITATION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

5

This endorsement modifies insurance provided under the following:
COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to any claims made or "suits" brought against the insured for liability arising out of "personal and advertising injury".

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

\*\*\*

11.     On August 1, 2025, Thread Capital, Inc. filed suit in the Wake County, North Carolina General Court of Justice, Superior Court Division, against Mark Bibbs Law PLLC d/b/a Mark Bibbs Law Group Consulting and Mark L. Bibbs, Civil Action No. 25-CVS-029076-910 ("Underlying Lawsuit" or "Underlying Complaint"). A copy of the Underlying Complaint is attached hereto as Exhibit B.

12.     The Underlying Complaint alleges that on or about November 5, 2020, the Defendant law firm executed a promissory note. It alleges that Defendant Mark Bibbs executed a guaranty agreement in which he personally guaranteed any and all debts of the law firm under the promissory note. According to the Underlying Complaint, the law firm executed the promissory note in favor of Business Expansion Funding Corporation. It alleges that in 2024 the note and guaranty were assigned to the Thread Capital, Inc. ("Thread Capital"). The Underlying Complaint alleges that the law firm breached the agreement by failing to make the required monthly payments. The Underlying Complaint alleges $285,961.81 is now due and owing, plus interest. The Underlying Complaint further alleges that upon the law firm's default Thread Capital made a demand upon Defendant Mark Bibbs for payment, but Defendant Bibbs failed or refused to make payment in full and is in breach of the guaranty. The Underlying Complaint alleges breach of contract claims against both defendants.

6

13. On October 27, 2025, the defendants in the Underlying Lawsuit filed a Counterclaim and Third-Party Complaint (the "Underlying Counterclaim"). A copy of the Underlying Counterclaim is attached hereto as Exhibit C.

14. The Underlying Counterclaim alleges that the terms of the promissory note were subsequently modified by law and by agreement. It alleges that the Plaintiff and Third-Party Defendant "harmed the reputation and character of the Defendant Bibbs by portraying him as defaulting on a loan that was not yet due, according to the terms and conditions of the Modification of Promissory Note entered into on May 21, 2024." The Underlying Counterclaim alleges that these parties "knew or should have known, that any inaccurate lawsuit filed, based upon these facts as presented, would cause the Defendant Bibbs undue embarrassment and severe emotional distress." It further alleges that these parties "knew or should have known, that any intentional, inaccurate lawsuit filed, based upon these facts as presented once put in writing, would invite derision and cause emotional distress for Defendant Bibbs, based upon the plain reading of the Plaintiffs Complaint...."

15. The Underlying Counterclaim alleges the following causes of action against Thread Capital: (1) breach of contract; (2) fraud; (3) unfair and deceptive trade practices; and (4) negligent infliction of emotional and mental distress.

16. Upon information and belief, the Defendants have or will make claims for liability coverage under the Selective Policy for the claims alleged against Thread Capital in the Underlying Counterclaim.

**FOR A FIRST DECLARATION**

17. Plaintiff repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

7

18.     The Selective Policy only provides Business Liability Coverage for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" or because of "personal and advertising injury" caused by an offense arising out of your business.

19.     The Selective Policy defines "property damage" as (a) physical injury to tangible property, including all resulting loss of use of that property; and (b) loss of use of tangible property that is not physically injured.

20.     The Underlying Counterclaim does not allege any "property damage," as that phrase is defined in the Selective Policy.

21.     The Business Liability Coverage part of the Selective Policy defines "bodily injury" as bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

22.     Under this definition, to qualify as "bodily injury", any alleged mental anguish must result from bodily injury, sickness or disease.

23.     Although the Underlying Counterclaim alleges that Thread Capital's filing of the Underlying Lawsuit caused Mark Bibbs mental/emotional injuries, it does not allege that any of those mental/emotional injuries resulted from any bodily injury, sickness or disease.

24.     Consequently, the Underlying Counterclaim does not allege any "bodily injury", as that phrase is defined in the Business Liability Coverage part of the Selective Policy.

25.     The Selective Policy defines "personal and advertising injury" as injury, including consequential "bodily injury", arising out of one or more of the following offenses: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a

person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement"; or (g) infringing upon another's copyright, trade dress or slogan in your advertisement.

26. Thus, to assert a "personal and advertising injury", a party must allege one of the above-enumerated offenses.

27. The Underlying Counterclaim does not assert a malicious prosecution claim against Thread Capital.

28. A malicious prosecution claim requires an earlier proceeding that ended in the favor of the party asserting the claim.

29. Consequently, the Underlying Counterclaim could not assert a malicious prosecution claim against Thread Capital.

30. The Underlying Counterclaim does not assert a libel, slander or disparagement claim against Thread Capital.

31. Moreover, the only "publication" alleged in the Underlying Counterclaim is Thread Capital's filing of the Underlying Lawsuit.

32. The counterclaimants in the Underlying Lawsuit could not assert a valid libel, slander or disparagement claim premised on Thread Capital filing the Underlying Lawsuit because the statements made in the Underlying Complaint are subject to an absolute privilege.

33. The Underlying Counterclaim does not allege any "personal and advertising injury," as that phrase is defined in the Business Liability Coverage part of the Selective Policy.

9

34. Therefore, Selective is entitled to a declaration that the Selective Policy does not provide any Business Liability Coverage for the claims alleged in the Underlying Counterclaim.

**<u>FOR A SECOND DECLARATION</u>**

35. Plaintiff repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

36. The Selective Policy only provides Umbrella Liability Coverage for the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence."

37. Under the terms of the Umbrella Liability Coverage part of the Selective Policy, this insurance does not apply to any claims made or "suits" brought against the insured for liability arising out of "personal and advertising injury". This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

38. The Selective Policy defines "property damage" as (a) physical injury to tangible property, including all resulting loss of use of that property; and (b) loss of use of tangible property that is not physically injured

39. The Underlying Counterclaim does not allege any "property damage," as that phrase is defined in the Selective Policy.

40. The Umbrella Liability Coverage part of the Selective Policy defines "bodily injury" as bodily injury, sickness, disease or disability sustained by a person, including death from any of these at any time including mental anguish or mental injury sustained by a person who has suffered a covered "bodily injury" as defined in this paragraph.

41. Under this definition, any alleged mental anguish or mental injury must result from bodily injury, sickness, disease, or disability to qualify as "bodily injury."

42. Although the Underlying Counterclaim alleges that Thread Capital's filing of the Underlying Lawsuit caused Mark Bibbs mental/emotional injuries, it does not allege that any of those mental/emotional injuries resulted from any bodily injury, sickness, disease or disability.

43. Consequently, the Underlying Counterclaim does not allege any "bodily injury", as that phrase is defined in the Umbrella Liability Coverage part of the Selective Policy.

44. This coverage part defines "personal and advertising injury" as injury, including consequential "bodily injury" arising out of one more of the following offenses: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies; committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication in any manner of material that violates a person's right of privacy; (e) oral or written publication in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service; (f) the use of another's advertising idea in your "advertisement"; (g) infringing upon another's copyright, trade dress or slogan in your "advertisement"; or (h) discrimination because of race, religion, age, sex or physical disability.

45. The Underlying Counterclaim does not allege any "personal and advertising injury," as that phrase is defined in the Umbrella Liability Coverage part of the Selective Policy.

46. Moreover, no "underlying insurance" provides liability coverage for the claims alleged against Thread Capital in the Underlying Counterclaim.

47. Therefore, Selective is entitled to a declaration that the Selective Policy does not provide Umbrella Liability Coverage for the claims alleged in the Underlying Counterclaim.

**WHEREFORE**, Selective respectfully requests that this Court inquire into these matters and declare that the Selective Policy does not provide any liability coverage for the claims alleged

11

against Thread Capital in the Underlying Counterclaim and that Selective has no duty to defend or indemnify with respect to any such claims, together with such other and further relief as the Court may deem just and proper.

MURPHY & GRANTLAND, P.A.

*s/ Wesley B. Sawyer*
Wesley B. Sawyer, Esquire (Fed. I.D. No.: 11244)
4406-B Forest Drive (29206)
Post Office Box 6648
Columbia, South Carolina 29260
(803) 782-4100
wsawyer@murphygrantland.com
Attorneys for Plaintiff Selective Insurance
Company of South Carolina

April 27, 2025